**FILED**
Lucinda B. Rauback, Acting Clerk
United States Bankruptcy Court
Savannah, Georgia
By jburrell at 4:15 pm, Aug 10, 2012

# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | |
|---|---|
| In the matter of: ) | |
| ) | Chapter 13 Case |
| GEORGE D. MIXON ) | |
| ) | Number <u>11-41568</u> |
| *Debtor* ) | |

## OPINION AND ORDER ON VALUATION

Debtor's Chapter 13 case was filed on August 1, 2011. Debtor owns a manufactured home and the 13.56 acre tract in Bryan County, Georgia on which the home sits (the "Property"), with a mortgage debt of $75,337.55. The residence and land are also encumbered by unpaid ad valorem taxes of $4,076.03 and a judgment lien held by Lynnette Turns. She filed a proof of claim on October 11, 2011, showing a balance on that judgment of $46,635.35.

Debtor scheduled the value of the Property at $192,020.00 when he filed his case. Dckt. No. 1. That value was based on the Bryan County tax assessor's valuation. Debtor amended his schedules on July 9, 2012, to advance a valuation of $110,000.00 based upon an appraisal. Dckt. No. 75. If adopted in a confirmed plan, this value would result in Ms. Turns's claim being unsecured or seriously undersecured, and thus would reduce the amount paid on her claim to pennies on the dollar.

Debtor filed an Amended Chapter 13 Plan (the "Plan") on March 21, 2012. Dckt. No. 65.[1] The Plan provided for Ms. Turns's allowed undersecured claim in the amount of $9,662.00 (the remaining equity in the collateral after Debtor's exemption and the superior liens on the Property are subtracted from the $110,000.00 value) and proposed a monthly payment of $200.00 with an interest rate of six percent. The Plan stated that Ms. Turns's claim would be "satisfied by completion of this Plan". Id. at ¶ 8. Ms. Turns filed an objection to the Plan on March 30, 2012, and argued that the Plan grossly undervalued the Property in an attempt to limit Debtor's repayment obligation. Dckt. No. 69.

Because the parties were unable to agree on value, the issue came before the Court to be tried on July 13, 2012. I heard the evidence of Cindy J. Hulsey who appraised the Property for Debtor and reached a value of $110,000.00. Exh. D-1. Ms. Turns produced the testimony and appraisal of Lynda Morse, a real estate broker, who strongly disagreed with Ms. Hulsey's value and rendered an opinion of what Ms. Morse believed a probable listing price of the Property would be. She concluded that an appropriate listing would be at least $150,000.00 for the land only.

Each of the opinions had certain weaknesses, as acknowledged by the experts. Ms. Hulsey acknowledged that there were no comparable sales of large tracts with

---

[1] After the hearing on the valuation issue, Debtor filed a new Amended Chapter 13 Plan. Dckt. No. 78. This new plan will not be considered for purposes of this Order as it was filed after the close of evidence at trial. See Alexander SRP Apartments, LLC v. LSREF2 Baron, LLC (In re Alexander SRP Apartments, LLC), Case No. 12-02015, Dckt. No. 12 at note 4 (Bankr. S.D. Ga. June 4, 2012) (Davis, J.).

manufactured homes in the appropriate market area. For that reason, she relied on comparables located twenty plus miles inland from this near-coast property. On the other hand, Ms. Morse used no comparable sales because there were none in the immediate coastal area. Still, she did not believe that Ms. Hulsey's comparables, so far removed from the relevant area, were useful. Instead, she relied on listings in the proper area, but not actual sales, which raised obvious weaknesses as well. Further, neither witness assigned a specific value to the manufactured home on the Property.[2]

With no comparable sales in the ideal market area on which to rely, I approach this decision using a different framework. While Ms. Hulsey's sales adjustment methodology was professional, whatever my assessment of the validity of her comparables, she deducted approximately $50,000.00 for "repair" of the tract of land, based on her observations of significant soil removal from two borrow pits. Exh. D-1 at 7. The larger of the two pits holds water and is intended by Debtor to be finished as a pond. I disregard the "repair" deduction she used because it is not certain that the Debtor or any purchaser would spend the money to refill the borrow pit, which is partially converted into a recreational pond. Further, if the pond is completed, I have no evidence of the effect on the land value because: (1) The soil removed to finish the pond has a monetary value; and (2) completion of the pond

---

[2] Ms. Morse testified as to the expected listing price of the land only but mentioned the manufactured home and stated that she would possibly list the Property for more than $150,000.00. Ms. Hulsey's appraisal did not place an exact value on the manufactured home, explaining the difficulty in assessing its value: "[t]here have been only a few manufactured home sales in the past year that would be considered arms-length transactions. This is primarily because of the lack of financing available for this type of loan as well as the availability to remove the home and/or replace." Exh. D-1 at 6.

will add value to the tract.

Despite the fact that there were no sales in the immediate area to rely on, I accept the opinion of Ms. Morse that the location of this tract near the coast, near construction of a new public school and public recreational facility, and in an area where subdivision activity is significant makes it more valuable than the comparables used by Ms. Hulsey. Moreover, Ms. Morse believed the highest and best use is development, inasmuch as the tract is located in an area already utilized for subdivision residential construction.

Therefore, because the coastal location and pond amenity raise the short-term value of this tract above the Hulsey number, and because in the intermediate term a development use is possible, I find the $110,000.00 value evidence unpersuasive. More persuasive is the fact that even Ms. Hulsey's value, unreduced by "repair" costs would be $160,000.00, without any adjustment for location. This amount and Ms. Morse's listing price of $150,000.00 for the land only, with an unknown added value for the home, bring the two witnesses' adjusted values very close to one another. Based on these figures, I set the value of Debtor's Property at $160,000.00.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the value of the Property for purposes of Debtor's retention and use of the Property as part

of any amended plan is $160,000.00.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 10th day of August, 2012.