**FILED**

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
*By rsimmons at 2:54 pm, Jun 10, 2013*

# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 13 Case |
| GEORGE D. MIXON | ) | |
| | ) | Number <u>11-41568</u> |
| *Debtor* | ) | |

## OPINION AND ORDER ON DEBTOR'S MOTION FOR RELIEF FROM STAY

Currently pending before the Court is Debtor's Motion for Relief from Stay, which he filed on February 13, 2013. Dckt. No. 122. Debtor requests relief from stay in order to pursue a state law case against Lynnette Turns, a judgment creditor in Debtor's bankruptcy case, to determine the amount of her debt and whether the judgment was proper. *Id.* This matter came on for hearing on March 11, 2013. Both the Debtor and Ms. Turns filed post-hearing briefs on March 25, 2013. Dckt. Nos. 137, 138, and 140. After a review of the record in this matter, the Court now enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor filed his Chapter 13 case on August 1, 2011. Debtor owns a manufactured home and the 13.56 acre tract in Bryan County, Georgia on which the home sits (the "Property"), with a mortgage debt of $75,337.55. The residence and land are also encumbered by unpaid ad valorem taxes and a judgment lien held by Lynnette Turns. Ms. Turns filed a proof of claim on October 11, 2011, showing a balance on that judgment of

$46,635.35.

Debtor and his wife had previously filed a Chapter 13 case in 2006 (Case No. 06-40977). A Chapter 13 plan was confirmed in that case on December 5, 2006. Case No. 06-40977, Dckt. No. 31. Debtor and his wife did not schedule Ms. Turns as a creditor until after the claims bar date had passed. *See* Case No. 06-40977, Dckt. No. 33. On February 20, 2007, they filed an amended Schedule F showing Ms. Turns as a creditor to whom Debtor and his wife were jointly liable in an unknown amount. *Id.* Ms. Turns moved to allow her late claim on April 24, 2007. Case No. 06-40977, Dckt. No. 36. On August 7, 2007, this Court entered an Order, to which the Debtor and his wife consented, allowing Ms. Turns's claim in the amount of $43,516.60. Case No. 06-40977, Dckt. No. 48.

The confirmed plan in the 2006 case required payments of $662.00 per month over the life of the plan, but rather than add Ms. Turns's late claim to those being paid through the Trustee, the parties agreed to pay Ms. Turns directly in the amount of $311.77 per month because they anticipated the repayment on her claim extending beyond the life of the plan. *See* Case No. 06-40977, Dckt. Nos. 31 and 48. In August 2007, Debtor and his wife filed one objection to claim, but did not object to Ms. Turns's claim. Case No. 06-40977, Dckt. No. 56.

Debtor and his wife defaulted on their direct payments to Ms. Turns, and Ms. Turns filed a Motion to Dismiss or Convert on December 7, 2007. Case No. 06-40977,

Dckt. No. 61. A consent order was entered on February 1, 2008, providing that the Debtors would resume regular direct monthly payments to Ms. Turns and cure their arrearage by making additional payments for four consecutive months. Case No. 06-40977, Dckt. No. 65. The Debtors then missed further payments and Ms. Turns filed an affidavit of default on March 26, 2010, which stated that the Debtors were $3,741.24 behind in payments and that the Debtors had paid only $785.00 to Ms. Turns. Case No. 06-40977, Dckt. No. 78. Ms. Turns's Affidavit of Default was withdrawn on April 6, 2010. Case No. 06-40977, Dckt. No. 79. Debtor was dismissed from the joint bankruptcy case on April 14, 2010, but his wife remained a debtor in the case. Case No. 06-40977, Dckt. No. 81. The Chapter 7 Trustee's report showed that Ms. Turns did not receive anything from the Trustee during that case. Dckt. No. 138-5.

Following Debtor's dismissal from his 2006 case, Ms. Turns sued him in in the State Court of Bryan County on October 21, 2010, to collect these unpaid loans. *See* Dckt. No. 138-2. Debtor was personally served with the Complaint, Request for Admissions, Request for Interrogatories, and Request for Production of Documents on October 27, 2010. *See id.* A response was required within thirty days of service, but Debtor failed to respond. Thus, the content of the pleadings in that matter were deemed admitted. A default judgment was entered by the state court on January 3, 2011. Dckt. No. 138-6. The judgment against the Debtor was in the total amount of $45,016.60, which includes $43,516.60 loaned to Debtor as part of the contract between the parties and attorney's fees in the amount of 10% of the overall judgment plus $50.00 for sheriff service. *Id.*

Seven months later, Debtor filed this Chapter 13 case. He scheduled Ms. Turns as a creditor with an "unknown" claim amount. Schedule F, Dckt. No. 1. His original Chapter 13 plan made no provision for payment of Ms. Turns's claim. Dckt. No. 17. Several amended plans were filed in this case, with various treatment of Ms. Turns's claim. Dckt. Nos. 44, 65, 78, 86, 88. Ms. Turns objected to two of these proposed Plans. Dckt. Nos. 31, 69.

Prior to confirmation, the parties sought from the Court a ruling on the valuation of Debtor's real estate because Ms. Turns contended that Debtor's proposed plan at that time (Dckt. No. 65) grossly undervalued the Property in an attempt to limit Debtor's repayment obligation on her judgment lien. A hearing was held on that matter July 13, 2012. On August 10, 2012, this Court entered an Order holding that the valuation of the Property for purposes of Debtor's use of the Property as part of any amended plan was $160,000.00. Dckt. No. 81. At no time did Debtor suggest that the amount of Ms. Turns's claim was in dispute. Indeed, the principal reason that valuation was in issue was the fact that the amount of her claim and the land value were essential to a determination of what the payout would be on her secured claim and on unsecured claims.

This Court confirmed the most recent amended plan (the "Plan") on December 5, 2012. Dckt. No. 112. The Plan proposes to sell Debtor's real estate to satisfy all liens on the property within twelve months. Plan, Dckt. No. 88. The Order on

Confirmation provides that the case is to be paid off 100% by May 1, 2013, or the case will be converted to Chapter 7. Dckt. No. 105. The Trustee's Report of Confirmation lists Ms. Turns's claim as secured in the amount of $46,635.35. Dckt. No. 126. Accordingly, Ms. Turns's allowed claim in the amount of $46,635.35 must be paid off by the Debtor in full. A Motion to Sell Real Property, which will partially pay Ms. Turns's claim, is pending. Dckt. No. 129. At the hearing on the Motion to Sell, the parties agreed to a closing deadline of June 15, 2013, for that sale, despite the May 1, 2013 deadline in the Confirmation Order. No Motion to Convert has been filed.

After the valuation ruling, but prior to confirmation, Debtor filed a motion in state court to set aside the Bryan County default judgment on September 11, 2012. Dckt. No. 138-1.[1] Only after confirmation of the Plan did Debtor file a Motion for Relief from Stay to pursue this earlier-filed state court action, which brought the issue before this Court for the first time. Dckt. No. 122.

## CONCLUSIONS OF LAW

11 U.S.C. § 362 governs the application of the automatic stay in bankruptcy

---

[1] In this motion, Debtor moved the state court to: (1) set aside the outstanding judgment "based upon fraud, accident or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant;" (2) set aside the outstanding judgment because Ms. Turns "is not entitled to recover of [Debtor] for the sums claimed by [Ms. Turns];" and (3) correct the outstanding judgment because of a "clerical mistake arising from errors committed from oversight or omission in computation of the judgment." Dckt. No. 138-1. Debtor argued that $21,916.66 of the sum claimed by Ms. Turns are evidenced by alleged advances to persons other than Debtor. *Id.* Additionally, Debtor asserted that his "bankruptcy case paid [Ms. Turns] approximately $6,315.00 . . . for which [Debtor] is entitled to be credited . . . ." *Id.* Finally, Debtor states that he is entitled to credit against the sum due Ms. Turns in the amount of $600.00 for "dirt hauled to Claxton at [Ms. Turns's] request." *Id.*

cases. Section 362(d) provides, in relevant part, that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

The Bankruptcy Code does define what constitutes "cause," and therefore courts must determine when discretionary relief is appropriate based on the totality of the circumstances. *In re* George, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004) (Davis, J.). Examining all of the relevant facts in this case, I find that no "cause" exists for granting relief from stay.

Courts have identified twelve factors to be weighed in determining whether a bankruptcy court should modify the stay to permit litigation to continue in another forum. These include: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the

interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *In re* R.J. Groover Const., LLC, 411 B.R. 473, 477 (Bankr. S.D. Ga. 2008) (Davis, J.); *In re* Eiseman, slip copy, 2013 WL 139262, at *1 (Bankr. E.D. Wis. 2013) (citing *In re* Sonnax Industries, Inc., 907 F.2d 1280 (2d Cir. 1990)).

In weighing these factors the Court does not need to specifically address each of them, but instead only needs to consider those factors relevant to this case. R.J. Groover Const., LLC, 411 B.R at 477. Here, I find that these factors weigh against granting relief from stay. This state court litigation would interfere with the present bankruptcy proceedings. Debtor's case has been pending for nearly two years and there is already a confirmed Plan in place obligating Debtor to pay his creditors in full. This potential state court litigation would delay completion of the Plan as Ms. Turns's claim would need to be relitigated. Likewise, relief from stay to allow Debtor to pursue this action would not be in the interest of judicial economy and expeditious and economical resolution of litigation. The parties' state law case is over two years old, and Debtor has had multiple opportunities to dispute the amount of Ms. Turns's claim in this Court, but has failed to do so. Balancing the harm to the parties, I find that Ms. Turns would be harmed by further litigation. She has

litigated the amount of her claim since 2006 and has had her claim established more than once. At some point, finality must be reached.

Moreover, even if these factors weighed in favor of Debtor, I find that Debtor should not be granted relief from stay to pursue a state law case against Ms. Turns because Debtor is judicially estopped from disputing the amount of Ms. Turns's claim.

Judicial estoppel is an equitable doctrine invoked at a court's discretion and intended to prevent litigants from asserting positions in one proceeding that would be inconsistent with positions asserted in other proceedings. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). The Supreme Court has noted that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). Nevertheless, the Court has provided several factors that may inform the decision of whether to apply the doctrine in a specific case: (1) whether a party's later position is "clearly inconsistent" with its earlier position, (2) whether the party has succeeded in persuading a court to accept that party's earlier position, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 750–51.

The Eleventh Circuit has applied two factors within this framework in the application of judicial estoppel to a particular case: (1) whether the allegedly inconsistent positions were made under oath in a prior proceeding, and (2) whether the inconsistencies were intentional contradictions calculated to make a mockery of the judicial system, rather than simple error or inadvertence. Burnes, 291 F.3d at 1285; Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273-75 (11th Cir. 2010). The requisite intent may be inferred from the record. Robinson, 595 F.3d at 1275.

Both the Eleventh Circuit and the Supreme Court have explained that these factors are neither inflexible nor exhaustive, and that courts must give due consideration to all the circumstances of a particular case when considering the applicability of the doctrine. Id. at 1286; New Hampshire, 532 U.S. at 751.

The circumstances surrounding this case lead me to conclude that Debtor is judicially estopped from challenging the amount of Ms. Turns's claim. Debtor's position now that the amount of Ms. Turns's claim is incorrect is clearly inconsistent with Debtor's previous acceptance of the amount of Ms. Turns's claim. Debtor consented to an Order in the previous 2006 bankruptcy case stating that Ms. Turns shall have an allowed claim of $43,516.60. Dckt. No. 48. In Debtor's current 2011 bankruptcy case, Ms. Turns's claim has been allowed in the amount of $46,635.35, and Debtor did not object to the amount of her

claim.[2] Despite a lengthy hearing on valuation, which was premised on determining whether the value of Debtor's property was sufficient to render her $46,635.35 claim fully secured, Debtor did not disclose that the amount of the claim was in dispute. His Plan was confirmed, allowing Ms. Turns's claim without objection and classifying it as fully secured. Now Debtor disputes her claim. These positions are clearly inconsistent. The sheer number of times Debtor has failed to dispute Ms. Turns's claim demonstrates that this contradiction was not simple inadvertence. I therefore conclude that the inconsistency was intentional.

Courts regularly inquire whether a party has succeeded in persuading a court to accept that party's earlier position in discerning whether judicial estoppel is appropriate. New Hampshire, 532 U.S. at 743. Here, the state court entered a default judgment because Debtor failed to respond to Ms. Turns's Complaint, Request for Production, Request for Interrogatories, and Request for Admissions in the state court case, despite being personally served with these documents. Now, this Court has confirmed a Plan in the current bankruptcy case with Ms. Turns's allowed claim amount as part of the payments to be made in the Plan. Therefore, Debtor has induced two courts to enter orders setting the amount of Ms. Turns's claim. Repeatedly Ms. Turns's claim amount has been determined and unquestioned. Her claim was settled when the state court issued its default judgment and when Debtor consented to the amount in the previous bankruptcy. Her claim amount was settled again

---

[2]This is not to suggest that a party can never object to a claim after confirmation of a plan. *In re* Shank, 315 B.R. 799, 801 (Bankr. N.D. Ga. 2004) ("Nothing in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure requires that objections [to proofs of claim] be filed prior to confirmation."). However, in light of the facts of this case I find that he is precluded from doing so.

when Debtor failed to object to Ms. Turns's claim and that claim was allowed in Debtor's confirmed Plan.

Finally, reopening the state court case and litigating Debtor's Motion to Set Aside Judgment would impose an unfair detriment on Ms. Turns, who has had to litigate this issue in state court and in Bankruptcy Court since 2006. A Plan has already been confirmed, and this case is reaching its conclusion. Debtor failed to disclose that he believed her claim amount was incorrect until his Motion to Set Aside Judgment was filed in September 2012, despite multiple earlier opportunities to do so. Therefore, Debtor is estopped from asserting such a position now.  Accordingly, no "cause" exists in this matter to warrant relief from stay.

### O R D E R

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Debtor's Motion for Relief from Stay is DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This ____ day of June, 2013.